IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| MARLON JAZZ TAYLOR, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 1:21-cv-01073-JDB-jay |
| v. ) | Ref. No. 1:18-cr-10030-JDB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

ORDER DENYING § 2255 MOTION, DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL IS NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Before the Court is the counseled motion of Petitioner, Marlon Jazz Taylor, under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 Motion"). (Docket Entry ("D.E.") 1.)[1] Respondent, the United States, filed a response, to which Petitioner replied. (D.E. 8, 9.) For the following reasons, the § 2255 Motion is DENIED.

## BACKGROUND

On February 19, 2019, the grand jury returned a four-count second superseding indictment against Taylor. (No. 1:18-cr-10030-JDB [hereinafter "18-cr-10030"], D.E. 206.) The first count alleged that he engaged in a conspiracy to distribute more than 50 grams of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 846. (*Id.*, D.E. 206.) The second count accused him of conspiring to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 846. (*Id.*, D.E. 206.) The third and fourth counts charged that he was a felon in knowing possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.*, D.E. 206.)

---

[1] Unless noted by the inclusion of a prefatory citation, all references to the record are to case number 1:21-cv-01073-JDB-jay.

Subsequently, represented by attorney Bede Anyanwu, Taylor pleaded guilty to count 1 of the second superseding indictment pursuant to a plea deal with the Government on April 10, 2019. (*Id.*, D.E. 31, 273, 274.) The written agreement included the following stipulation:

> The parties agree to recommend that the amount of drugs for which the defendant should be held accountable equates to more than 50 grams of Methamphetamine. The parties acknowledge that this stipulation is a recommendation, and that determining the amount of drugs for which the defendant should be held accountable is a matter to be determined by the district court.

(*Id.*, D.E. 274 at PageID 452–53.) The plea agreement did not, however, contain any promise that the Government would recommend a sentence or sentence range; thus, the appropriate sentence would be left to the Court. (*Id.*, D.E. 274.) At the change of plea hearing, the Court advised Taylor of the rights he would surrender by pleading guilty (*Id.*, D.E. 377 at PageID 1076–79) and read the count of the indictment to which he was pleading (*Id.*, D.E. 377 at PageID 1079–80). The undersigned also explained that the maximum potential sentence of incarceration for count 1 was life, to which Taylor voiced his understanding. (*Id.*, D.E. 377 at PageID 1080–81.) Based on Defendant's colloquy, the factual basis provided by the Government (*Id.*, D.E. 377 at PageID 1094–96), and Taylor's acknowledgment that he was pleading guilty because he was in fact guilty (*Id.*, D.E. 377 at PageID 1097), the Court determined that Petitioner entered his plea freely and voluntarily (*Id.*, D.E. 377 at PageID 1097). Subsequently, following a hearing at which the Government produced testimony and the parties presented arguments, the Court sentenced Taylor to incarceration for life consistent with the United States Sentencing Guidelines ("Guidelines") and the recommendation of the United States Probation Office. (*Id.*, D.E. 329-1, 336, 341.)

## LEGAL STANDARD

To state a cognizable § 2255 claim, a petitioner must allege: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that

was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). An error of constitutional magnitude is one "which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A claim that an attorney's performance deprived a defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Such a claim is controlled by *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To allege an ineffective-assistance claim, a petitioner must aver two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To prove prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

3

*Id.* Relating to the decision to plea, a "defendant must show that 'counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *United States v. Johnson*, 765 F.3d 644, 647 (6th Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A defendant does so "by demonstrating 'a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial.'" *Miller v. Straub*, 299 F.3d 570, 578 (6th Cir. 2002) (quoting *Hill*, 474 U.S. at 59).

## ANALYSIS

Taylor seeks relief for four errors by Anyanwu: (1) providing erroneous guidance about the consequence of his guilty plea; (2) failing to request and receive a pre-plea Presentence Report ("PSR") addressing the drug quantity; (3) neglecting to seek a downward variance based on the purity of the methamphetamine; and (4) foregoing an objection to a two-point enhancement for maintaining a premises for the purpose of trafficking narcotics. (D.E. 1 at PageID 5–9.) The Government maintains that none of these alleged deficiencies satisfy *Strickland*. (D.E. 8.)

<u>Claim I: Erroneous Advice About the Consequences of Guilty Plea</u>

The Inmate alleges that his counsel advised him prior to pleading guilty that the Court would sentence him to five to fifteen years of incarceration.[2] (D.E. 1-1 at PageID 17.) Taylor relied on that representation in pleading guilty. (*Id.*) Petitioner asserts that his plea, which resulted in a sentence of life in prison, was thus not knowing because it was premised on incorrect counsel. (*Id.*) If he had known that he would be subject to a life sentence by pleading guilty, he would not have pleaded because doing so would have offered him no benefit as opposed to proceeding to

---

[2] The Government asked Anyanwu to provide an affidavit addressing Taylor's allegations. Counsel did not respond. (D.E. 8 at PageID 273 n.1.) Accordingly, the Court only has the Inmate's version of events on which to rely. But, as explained, even accepting the allegations as true, Petitioner's contentions do not present a valid claim for relief.

trial. (*Id.* at PageID 20.) The Government responds that any erroneous guidance was dispelled by the Court's proper plea colloquy. (D.E. 8 at PageID 277–78.) And that colloquy undercuts Petitioner's claim that his plea agreement was confusing or related only to methamphetamine not *actual* methamphetamine. (*Id.*) In sum, Anyanwu's representation was not ineffective and, if it was, the Court cured any deficiency through the plea colloquy. (*Id.* at PageID 274–79.)

To prevail, Taylor must prove that Anyanwu's performance was so deficient as to not be the counsel promised by the Sixth Amendment and that he would not have pleaded but for the misleading advice. *Miller*, 299 F.3d at 578 (quoting *Hill*, 474 U.S. at 59). Even assuming he could show deficient performance, a claim of prejudice for erroneous advice about the consequences of a plea is foreclosed by a proper colloquy:

> When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. The court's proper advisement of rights is thus deemed to "foreclose" any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood.

*United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citations omitted).

Here, the Court remedied Anyanwu's alleged failings through the following colloquy:

THE COURT: Now, Mr. Taylor, having gone over those rights with you, is it still your intention to enter a plea of guilty to Count 1 of the second superseding indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you seen a copy of that document, the second superseding indictment? Have you seen a copy of that, sir?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Have you had a chance to read over it and discuss it with Mr. Anyanwu?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I'm going to go over Count 1 with you once more, simply to make sure you are fully aware of what it is you intend to plead guilty to.

Second superseding indictment Count 1 states as follows.

Beginning at a time unknown to the Grand Jury, but through at least on or about September 1 of 2018, in the Western District of Tennessee, the following defendants, including yourself, Marlon Jazz Taylor, . . . did unlawfully, knowingly, and intentionally conspire, combine, confederate and agree together, and with other persons both known and unknown to the Grand Jury, to unlawfully, knowingly and intentionally possess with the intent to distribute, and did distribute more than 50 grams of *actual methamphetamine*, with [sic] is a Schedule II controlled substance as classified by 21, United States Code, Section 812.

These actions being in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Now do you understand what you are being charged with in Count 1, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The potential penalties for a violation of the statutes I set forth in Count 1, could be a sentence of[] what is called a mandatory minimum sentence of not less than 10 years imprisonment, *not more than life*, plus up to $10 million fine, plus five years of supervised release.

Or after having sustained one prior drug felony conviction, then the potential sentence could be a mandatory minimum sentence of not less than 20 years, no more than life, plus up to a $20 million fine, plus up to 10 years supervised release.

Or after two or more prior felony drugs convictions, would be life imprisonment.

All together with a mandatory special assessment of $100.

Do you understand what the possible penalties are regarding Count 1, sir?

THE DEFENDANT: Yes, Your Honor.

(18-cr-10030, D.E. 377 at PageID 1079–81) (emphasis added).

Federal Rule of Criminal Procedure 11 governs the process for entering a plea of guilty. Fed. R. Crim. P. 11. Specifically, Rule 11(b) outlines the three obligations of the district judge in

considering and accepting a guilty plea. First, the court must address the accused in open court. In so doing, the judge must inform the defendant of and ensure that they understand:

> (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath; (B) the right to plead not guilty, or having already so pleaded, to persist in that plea; (C) the right to a jury trial; (D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding; (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; (F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere; (G) the nature of each charge to which the defendant is pleading; (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release; (I) any mandatory minimum penalty; (J) any applicable forfeiture; (K) the court's authority to order restitution; (L) the court's obligation to impose a special assessment; (M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and (O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Fed. R. Crim. P. 11(b)(1).

Second, the court must confirm that "the plea is voluntary and [does] not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). This is an acknowledgment of the constitutional mandate that a plea of guilty be made voluntarily, knowingly, and intelligently. *See United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (quoting *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)); *see also United States v. Mizori*, 604 F. App'x 413, 416 (6th Cir. 2015) (citing *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005)) (noting that a plea must be knowingly, intelligently, and voluntarily entered). Finally, the judge "must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The court can do so through multiple sources, including a statement by a representative of the United States outlining the facts supporting the plea, witness testimony, or a statement from

the defendant. *See United States v. Mobley*, 618 F.3d 539, 545 (6th Cir. 2010) (quoting *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995)).

As the Sixth Circuit acknowledged in its order dismissing Petitioner's attempted direct appeal, the undersigned complied with Rule 11's requirements in advising Taylor, ascertaining that his plea was voluntary and knowing, and acknowledging a factual basis for the conviction. (18-cr-10030, D.E. 439 at PageID 1328.) As such, Petitioner was adequately informed of the charge to which he was pleading guilty and the potential sentence for that crime. Neither the Government nor the Court promised Taylor a sentence of less than the maximum. (*See id.*, D.E. 274 & 377.) Thus, even if Anyanwu was deficient, Taylor had a duty to listen to the Court's statements and answer truthfully as to whether he understood them. At every chance, Petitioner indicated he knew he was pleading guilty to count 1 of the second superseding indictment for conspiracy to distribute more than 50 grams of actual methamphetamine and that the potential penalty was incarceration for life. (*Id.*, D.E. 377 at PageID 1079–81.) That Taylor ignored the Court's statements in favor of Anyanwu's does not offer him safe harbor.

In sum, even accepting that Anyanwu's performance was deficient, Taylor cannot establish prejudice. The Court informed Petitioner that he was pleading guilty to conspiring to deliver more than 50 grams of actual methamphetamine. (*Id.*, D.E. 377 at PageID 1079–81.) Taylor voiced his understanding and acknowledged that the potential penalty for his crime was life imprisonment. (*Id.*, D.E. 377 at PageID 1079–81.) Therefore, Petitioner's first contention is rejected.

### Claim II: Failure to Request a Pre-Plea Presentence Report

Second, Taylor alleges that Anyanwu was ineffective by not requesting a pre-plea PSR that would have indicated the type of methamphetamine (i.e., actual or regular) and the amount for which he would be held accountable. (D.E. 1-1 at PageID 27–29.) The Government retorts that

8

such a PSR is contemplated neither by the Federal Rules of Criminal Procedure nor the Local Rules or customs of this Court, Petitioner knew he was pleading to actual methamphetamine, and a pre-plea PSR would not have conclusively established the amount. (D.E. 8 at PageID 281–82.)

The Inmate points to no statute, rule of procedure, or case mandating the preparation of a pre-plea PSR. (D.E. 1-1 at PageID 27–29.) He likewise references no law showing that a failure to receive a pre-plea PSR renders counsel's performance ineffective. (*Id.*). Moreover, it is not a practice of this Court to order the preparation of such reports. *See* LCrR 32.1(b) (acknowledging the preparation of a PSR only prior to sentencing). As such, it was not deficient for Anyanwu to advise Taylor to plead guilty prior to the preparation of a pre-plea PSR as no such report is contemplated by the federal or local rules and this Court does not have a practice of requesting or requiring them. Furthermore, because the Government would have still had to prove the quantity of drugs at the sentencing hearing regardless of what a pre-plea PSR might have said and Petitioner knew he was pleading guilty to conspiring to distribute actual methamphetamine, a pre-plea PSR would have offered no benefit. Thus, the Inmate could not prove prejudice. Therefore, Taylor's second allegation is denied.

Claim III: Failing to Seek a Downward Variance

Third, the Inmate maintains that Anyanwu provided ineffective assistance by not seeking a downward variance based on the purity of the methamphetamine. (D.E. 1-1 at PageID 24–27.) According to Taylor, if Anyanwu had argued for a downward departure because the guidelines make an outdated assumption about the purity of methamphetamine, "there is a reasonable chance the court would have at the very least[] reduced the sentence to some level that would provide some hope for the future." (*Id.* at PageID 26.) The Government responds that Petitioner has not demonstrated that failing to argue for a variance falls below the objective standard of

9

reasonableness contemplated by *Strickland*. (D.E. 8 at PageID 280.) Even if it did, Taylor has not established a reasonable probability that the Court would have exercised its discretion to deviate from the sentencing guidelines. (*Id.*)

For sentences that otherwise comply with mandatory minimums established by Congress, district judges typically possess considerable discretion as to the appropriate sentence for an offense. *See United States v. Schrank*, 975 F.3d 534, 537 (6th Cir. 2020) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)) ("To be sure, district judges have considerable discretion when imposing sentences."); *United States v. Nichols*, 897 F.3d 729, 733 (6th Cir. 2018) (citation omitted). Of course, that power is not limitless and it may not be exercised unreasonably or arbitrarily. *See Schrank*, 975 F.3d at 537. The Sentencing Guidelines promulgated by the United States Sentencing Commission help guide a court's discretion. *See* U.S. Sent'g Guidelines Manual § 1A1 (U.S. Sent'g Comm'n 2018). The Guidelines are no longer mandatory, but they are advisory in levying a just sentence. *See Hughes v. United States*, 584 U.S. 675, 681 (2018) ("After this Court's decision in [*Booker*], the Guidelines are advisory only. But a district court still 'must consult those Guidelines and take them into account when sentencing.'") (quoting *United States v. Booker*, 543 U.S. 220, 264 (2005)). The United States Probation Office also assists the Court by preparing a PSR, which offers a comprehensive view of the defendant's vocational, educational, and criminal history, medical background, the crime at issue, and other relevant factors, before recommending a sentence. *See* Fed. R. Crim. P. 32; LCrR 32.1. Prior to announcing a sentence, the Court considers the Guidelines, the PSR, the arguments of the parties, and the factors outlined in 18 U.S.C. § 3553(a). *Cf. United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006) (highlighting the relevant factors a sentencing court must consider before announcing judgment). Defendants

may seek sentences below the Guideline range, as well as the recommendations of the Government and the PSR, but courts are not required to accept such contentions.

In Taylor's case, based on the quantity and purity of the methamphetamine involved, the Guidelines and the PSR advised a sentence of life imprisonment, and the Government sought that sentence. (18-cr-10030, D.E. 329-1 at PageID 728; *id.*, D.E. 376 at PageID 1029–30.) In reaching that calculation, the Guidelines differentiate between pure and regular methamphetamine.[3] Admittedly, some of this Court's sister districts have chosen to disregard that differentiation. *See, e.g.*, *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1257 (D.N.M. 2017) ("Given that average street-level methamphetamine today is over 90 percent pure, the Guidelines range for methamphetamine creates a false uniformity between minor criminals and drug kingpins by focusing on drug purity . . . In effect, the Commission asks the Court to sentence defendants to harsher sentences . . . for purely arbitrary reasons."). Those examples do not create a binding rule, however. *See United States v. Kennedy*, 65 F.4th 314, 326 (6th Cir. 2023) (citations omitted) ("A number of district courts have found the disparity to be a policy reason not to follow the Guidelines in cases involving pure methamphetamine. However, although a district court *may* take this policy disagreement into consideration, it is within the court's discretion not to do so."). Indeed, the Inmate has highlighted no binding precedent requiring a district judge to disregard the Guidelines based on purity. In fact, the Sixth Circuit has stated, "The fact that a district court may disagree with a Guideline for policy reasons and may reject the Guidelines range because of that disagreement does not mean that the court must disagree with that Guideline or that it must reject

---

[3] The comments to the Guidelines indicate that the distinction in sentencing based on purity is warranted because drugs are typically diluted as they pass through the chain of distribution; thus, individuals possessing purer narcotics may be presumed to be closer to the source of the drugs. U.S. Sent'g Guidelines Manual § 2D1.1 cmt. 27C (U.S. Sent'g Comm'n 2018).

11

the Guidelines range if it disagrees." *United States v. Alonzo*, 811 F. App'x 301, 306 (6th Cir. 2020) (emphasis omitted) (quoting *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011)).

Petitioner cannot demonstrate that neglecting to argue that a court should eschew the Guidelines on policy grounds is deficient performance. More problematic still, the Inmate can only speculate about whether the Court would have credited that argument. Taylor has not cited one case from the Western District of Tennessee where this Court has followed such an argument. At base, he is trying to relitigate his sentence based on a supposition about what the Court might have done in response to a given policy argument. That is not the province of a § 2255 Motion. Petitioner has not produced any statute, rule, or case declaring that counsel's failure to pursue a variance based on the methamphetamine purity is ineffective assistance. (D.E. 1-1 at PageID 24–27.) The Inmate likewise has not averred authority suggesting that the Court would have accepted that argument considering the substantial evidence supporting the sentence rendered. Therefore, Taylor's third contention is rejected.

<u>Claim IV: Foregoing an Objection to Maintaining a Premises for Narcotics Trafficking</u>

Finally, without citing any law, the Inmate alleges that Anyanwu was ineffective for not objecting to a two-point enhancement in the offense level for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance[.]" (D.E. 1-1 at PageID 29–30 (quoting U.S. Sent'g Guidelines Manual § 2D1.1(b)(12) (U.S. Sent'g Comm'n 2018).) If Anyanwu had made such an objection, according to Taylor, that would have reduced his offense level by two points. (*Id.*) The Government responded that the testimony presented at sentencing established facts sufficient to prove the enhancement, which the Court found applied in rendering a sentence. (D.E. 8 at PageID 282–83.) As such, according to the United States, Taylor cannot

support a finding of prejudice as independent evidence existed for the enhancement regardless of the objection. (*Id.*)

Here, even accepting for purposes of argument that Anyanwu acted deficiently, Taylor was not prejudiced for two reasons. First, as the Government averred, Federal Bureau of Investigation Special Agent David Mobley testified to facts warranting the enhancement. (18-cr-10030, D.E. 376 at PageID 898–99, 913–14, 1061.) Second, and most importantly, even if the Court had granted the objection, it would have made no difference in the offense level. At sentencing, before considering the coercion of a witness, the undersigned calculated the range to 46. (*Id.*, D.E. 376 at PageID 1062.) But under Chapter 5, Part A, Comment 2, as the total offense level was greater than 43, the Court reduced it to 43. (*Id.*, D.E. 376 at PageID 1062.) Then the Court added 2 points for coercion of a witness, making the total 45. (*Id.*, D.E. 376 at PageID 1063.) After the two-point reduction for acceptance of responsibility, the total offense level was 43. (*Id.*, D.E. 376 at PageID 1063.) With that said, even if the Court would not have added 2 points for maintaining a premises for narcotics trafficking, the original range would have been 44, which would have been lowered to 43 under Chapter 5, Part A, Comment 2. *See* U.S. Sent'g Guidelines Manual § 5A cmt. 2 (U.S. Sent'g Comm'n 2018) ("An offense level of more than 43 is to be treated as an offense level of 43.") Consequently, assuming that Anyanwu should have objected and the Court would have accepted that objection, the offense level would not have changed; thus, Taylor cannot show prejudice. His fourth claim, therefore, is denied.

## CONCLUSION

Accordingly, Taylor's § 2255 Motion is DENIED.

13

## APPELLATE ISSUES

A § 2255 petitioner may not proceed on appeal unless a judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the § 2255 Motion.  Because any appeal by Taylor does not deserve attention, the Court DENIES a certificate of appealability.

A habeas petitioner seeking to appeal must pay the $605 filing fee required by 28 U.S.C. §§ 1913 and 1917.  Under Rule 24(a)(1) of the Federal Rules of Appellate Procedure, a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the petitioner must move to proceed in forma pauperis in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).

For the same reason it denies a COA, the Court finds that any appeal would not be taken in good faith.  The Court therefore CERTIFIES under Rule 24(a) that any appeal would not be taken in good faith and DENIES Taylor leave to appeal in forma pauperis.

IT IS SO ORDERED this 16th day of April 2024.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE